**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Charles Vachereau, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Trusted Fraternal Life,<br><br>Defendant. | Case No. 26-CV-3782<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## Nature of the Action

1. This is a collective action arising under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 et seq. (the "ADEA"), including the Older Workers Benefit Protection Act (the "OWBPA"), 29 U.S.C. § 626(f).

2. Plaintiff Charles Vachereau brings this action individually and on behalf of all other similarly situated employees age 40 and older who were selected for termination and/or offered severance by Defendant Trusted Fraternal Life ("TFL" or "Defendant") in connection with the reductions in force ("RIFs") and severance program that TFL implemented following the merger of Catholic United Financial into TFL during 2025.

3. Effective January 1, 2025, Catholic United Financial merged into TFL and became a TFL brand. TFL then carried out a series of merger-related terminations in successive waves under a common decisional process, common decision-makers, and a single, standardized severance plan, the "Catholic United Financial Merger Severance Plan." The employees selected for termination disproportionately included older workers. Every employee identified in the first wave of cuts, in February 2025, was in his or her sixties.

4. Mr. Vachereau, age 46, was a Senior Program Manager with an unblemished performance record. On July 9, 2025, in the second round of terminations carried out under the same merger-related termination plan, TFL terminated Mr. Vachereau, asserting that his "position [was] being eliminated," even though his duties continued and were redistributed to, and performed by, substantially younger employees.

5. When Mr. Vachereau requested the age and job-title disclosures that the OWBPA requires before an employer may obtain a valid waiver of ADEA claims in a group termination, TFL refused, asserting through counsel that it was "not required" to provide them. TFL's refusal evidences the willfulness of TFL's violations and reflects an effort to obscure the age-based character of its merger RIFs.

6. Plaintiff seeks declaratory and injunctive relief, back pay, front pay (or reinstatement), liquidated damages, and attorneys' fees and costs, for himself and the similarly situated members of the Collective defined below.

**Parties**

7. Plaintiff Charles Vachereau is an adult individual who resides in Lonsdale, Rice County, Minnesota. He was born on November 9, 1978, and was 46 years old at the time of his termination. At all relevant times he was an "employee" within the meaning of the ADEA, 29 U.S.C. § 630(f), and was a member of the protected age group (age 40 and older).

8. Defendant Trusted Fraternal Life is a fraternal benefit society organized under the laws of the State of Wisconsin, with its principal place of business in Milwaukee, Wisconsin. TFL maintains a place of business at 3499 Lexington Avenue North, St. Paul (Arden Hills), Minnesota 55126, and conducts business in this District.

9. Effective January 1, 2025, Catholic United Financial, a fraternal benefit society headquartered in St. Paul, Minnesota, merged into TFL, after which Catholic United Financial operated as a brand of TFL and TFL assumed responsibility for integrating and consolidating the two organizations' operations and workforces.

10. At all relevant times, TFL was an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b), and was engaged in an industry affecting commerce with twenty or more employees.

**Jurisdiction and Venue**

11. This Court has subject-matter jurisdiction over Plaintiff's ADEA claims under 28 U.S.C. § 1331 (federal question) and 29 U.S.C. § 626(c).

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred here, Plaintiff was employed in, and was terminated from, TFL's St. Paul/Arden Hills office, and because Defendant conducts business in this District.

**Administrative Exhaustion**

13. Mr. Vachereau timely filed a class-wide Charge of Discrimination against TFL with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about January 29, 2026, designated EEOC Charge No. 444-2026-01215, alleging age discrimination and retaliation on his own behalf and on behalf of similarly situated employees age 40 and older. The Charge was filed within 300 days of Mr. Vachereau's termination. See 29 U.S.C. § 626(d)(1)(B).

14. More than sixty (60) days have elapsed since the filing of the Charge. See 29 U.S.C. § 626(d).

15. On June 2, 2026, the EEOC completed its administrative processing of the Charge and issued Mr. Vachereau a Determination and Notice of Rights, which Mr. Vachereau received on or about June 2, 2026. This action is filed within ninety (90) days of his receipt of that Notice. See 29 U.S.C. § 626(e).

16. Plaintiff has exhausted all administrative remedies and complied with all statutory prerequisites to filing this action.

## Factual Allegations

### A. The Merger and TFL's Merger-Related Severance Program

17. Catholic United Financial, a fraternal benefit society headquartered in St. Paul, Minnesota, merged into Milwaukee-based TFL effective January 1, 2025. After the merger, Catholic United Financial became a brand of TFL, and TFL undertook to integrate and consolidate the two organizations' operations.

18. As part of that integration, TFL implemented merger-related terminations and offered affected employees severance under a single, standardized plan referred to as the "Catholic United Financial Merger Severance Plan." Under that plan, affected employees received a minimum of six weeks' pay plus approximately two weeks of pay per year of service.

19. Upon information and belief, TFL's merger-related terminations were carried out pursuant to a single termination plan adopted in connection with the merger.

20. Upon information and belief, the same TFL leaders made the selection decisions for each wave of terminations, evaluating a company-wide pool of employees using consistent criteria over a continuous, multi-month period, and every affected employee was offered severance under the same standardized severance plan.

**B. Mr. Vachereau's Employment and Performance**

21. Mr. Vachereau began working for Catholic United Financial on or about August 22, 2022, and continued in TFL's employ after the merger. His final position was Senior Program Manager in the Transformation Office, based in the St. Paul/Arden Hills office, at an annual salary of approximately $130,000.

22. Throughout his employment, Mr. Vachereau performed his job well. He received consistently positive performance reviews and was never subject to any written warning, performance-improvement plan, or disciplinary action.

23. Mr. Vachereau's position initially survived the first wave of merger-related cuts. He worked full-time on integration and strategic initiatives throughout the first half of 2025 and, shortly before his termination, developed a 3-, 6-, 12-, and 18-month project roadmap for his department's post-merger work, conduct inconsistent with any genuine elimination of his role.

**C. The February 2025 Wave: Every Identified Employee Was Over 60**

24. In or about February 2025, TFL carried out the first wave of terminations under its merger-related termination plan, which primarily affected the St. Paul operations. Every identified employee selected in this wave was over the age of 60, including:

a. Joe Mickelson (approximately age 60–62), Portfolio Manager, Investments, St. Paul, employed since June 2003;

b. "Butch" Colago (approximately age 63–64), Senior Sales Outreach Specialist, Sales Support, St. Paul, employed for more than 25 years; and

c. Tara Donohue Weiss (approximately age 60–62), Medicare Supplement Specialist, Sales Support, St. Paul, employed since October 2015.

25. Each of these employees was offered severance under the Catholic United Financial Merger Severance Plan. The concentration of older, long-tenured workers in this first wave supports an inference that age was a factor in TFL's selection decisions.

26. In or about June 2025, TFL also transitioned out another older worker, Gary Maki (age 59), but characterized his departure as a "retirement" while, upon information and belief, requiring him to transfer his duties to younger employees.

**D. Mr. Vachereau's July 9, 2025 Termination**

27. On July 9, 2025, in the second wave of terminations under the same merger-related termination plan, TFL terminated Mr. Vachereau in a meeting with Kristen Mueller (Vice President, Human Resources) and Amy Bellows (Vice President, Transformation, and Mr. Vachereau's direct supervisor), after which he was escorted from the building.

28. Ms. Mueller told Mr. Vachereau that his "position is being eliminated." Ms. Bellows stated that the decision was "not performance-based" and that "two other people are impacted as well."

29. Mr. Vachereau's termination came as a surprise. He had experienced no reduction in his workload and had received no indication that his job was in jeopardy; to the contrary, he had just proposed a long-term roadmap for his department's continuing work.

**E. TFL's "Position Elimination" Rationale Was Pretextual**

30. Although TFL claimed Mr. Vachereau's position was "eliminated," his duties did not disappear. His responsibilities were redistributed to Justin Kirchen, a substantially younger employee (under 40) who held the same Senior Program Manager title, performed comparable program-management and integration work, and was retained.

31. Weeks before terminating Mr. Vachereau, TFL hired Prameet Chadha, a younger business analyst (upon information and belief, under 40), into the same Transformation Office, reporting to the same supervisor (Ms. Bellows), with duties overlapping Mr. Vachereau's technology-integration and operational responsibilities.

32. Upon information and belief, Mr. Vachereau was the oldest employee in his position at the time of the July 2025 terminations.

33. Retaining and hiring substantially younger employees to perform Mr. Vachereau's work, while discharging the older incumbent, contradicts TFL's "position elimination" rationale and supports an inference that age was a determinative factor in the decision to terminate him.

**F. The Group Termination and TFL's Refusal of OWBPA Disclosures**

34. Mr. Vachereau's termination was part of the ongoing planned terminations under TFL's merger-related termination plan and was part of a group termination: TFL acknowledged on July 9, 2025 that "two other people are impacted as well," and, upon information and belief, all of the July 9, 2025 separations took effect on the same day and used the same Catholic United Financial Merger Severance Plan formula.

35. At the termination meeting, Ms. Mueller told Mr. Vachereau he had 21 days to consider signing a release of claims, which included a release of ADEA claims.

36. Because the July 9, 2025 terminations were part of a group termination program under which severance was offered to two or more employees, the OWBPA required TFL to give each affected employee at least forty-five (45) days to consider the release and to provide each affected employee written disclosure of, among other things, the class, unit, or group of individuals covered by the program, the program's eligibility factors and applicable time limits, and the job titles and ages of all individuals selected and not selected for the program. See 29 U.S.C. §

626(f)(1)(F)(ii), (H); 29 C.F.R. § 1625.22(f). TFL provided only 21 days and none of the required disclosures.

37. Mr. Vachereau requested disclosure of the ages and job titles of the individuals selected and not selected within the applicable decisional unit, information the OWBPA requires before an employer may obtain a valid release of ADEA claims in connection with a group termination program.

38. TFL refused. Ms. Mueller responded, in substance: "I know what you are asking for, and our attorney said we are not required to provide that here."

39. To date, TFL has never provided the disclosures the OWBPA requires.

40. TFL's contention that only one person was in Mr. Vachereau's "decisional unit" cannot be reconciled with its own statement that "two other people [were] impacted as well," the common severance plan, and the common leadership and selection process spanning the February and July 2025 waves.

41. Because TFL failed to provide the OWBPA-required disclosures and consideration period applicable to group terminations, any release of ADEA claims obtained from members of the Collective in connection with the merger-related severance program is not "knowing and voluntary" and is invalid and unenforceable to bar those claims. See 29 U.S.C. § 626(f)(1); Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998).

42. Mr. Vachereau did not sign the release or accept severance, and has waived none of his claims.

## G. Common Decisional Process and Willfulness

43. The February and July 2025 terminations were not isolated events. They were carried out by the same leadership, drew from a company-wide evaluation of employees, applied

consistent criteria, and used the same severance plan over a continuous, roughly five-month period, hallmarks of a single, common termination program and decisional process.

44. TFL knew of its obligations under the ADEA and the OWBPA, or acted in reckless disregard of whether its conduct violated those laws, including by refusing, purportedly on the advice of counsel, to provide the disclosures the OWBPA requires. TFL's violations were therefore willful within the meaning of 29 U.S.C. § 626(b).

**H. TFL's Concealment of the Common Termination Program and Tolling**

45. TFL has never provided the disclosures required by 29 U.S.C. § 626(f)(1)(H) to Mr. Vachereau or, upon information and belief, to any employee selected for termination under the merger-related termination plan. Instead, TFL told terminated employees, individually, that their positions were being "eliminated," concealing the existence, scope, and age composition of the common termination program from the very employees it affected.

46. As a result of TFL's concealment, employees selected for termination under the program, including those terminated in the February 2025 wave, did not know, and could not through the exercise of reasonable diligence have discovered, the facts giving rise to their claims of age discrimination. Any applicable period for those employees to file administrative charges or otherwise assert their claims has accordingly been equitably tolled.

**Collective Action Allegations (ADEA, 29 U.S.C. §§ 626(b), 216(b))**

47. Plaintiff brings Count I on behalf of himself and a collective of similarly situated individuals under 29 U.S.C. § 626(b), which incorporates the collective-action procedure of 29 U.S.C. § 216(b).

48. The proposed ADEA collective (the "Collective") is defined as: All individuals age 40 and older who were selected for termination and/or offered severance by TFL in connection

with the Catholic United Financial–TFL merger-related reductions in force and severance program during 2025, including but not limited to the February 2025 and July 2025 termination waves.

49. The members of the Collective are similarly situated because they were subjected to the same merger-related termination program, the same decisional process and decision-makers, the same selection criteria, and the same severance plan, and because they were adversely affected by TFL's common policy or practice of selecting older workers for termination.

50. Individuals who signed releases and accepted severance under the Catholic United Financial Merger Severance Plan may nonetheless participate in this action. Because TFL failed to comply with the OWBPA, any release of ADEA claims obtained under that severance program is invalid and unenforceable, and those individuals may pursue ADEA claims in this action without tendering back, or otherwise forfeiting, the severance they received. See Oubre v. Entergy Operations, Inc., 522 U.S. 422 (1998).

51. Plaintiff will fairly and adequately represent the Collective and has retained counsel experienced in employment and collective litigation. Plaintiff requests that the Court authorize notice to all potential members of the Collective so that they may opt in pursuant to 29 U.S.C. § 216(b).

## CAUSES OF ACTION

### COUNT I

### Age Discrimination in Violation of the ADEA, 29 U.S.C. § 623(a)(1)

### (Individually and on Behalf of the Collective)

52. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

53. The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against any individual age 40 or older with respect to compensation, terms, conditions, or privileges of employment because of the individual's age. 29 U.S.C. §§ 623(a)(1), 631(a).

54. Mr. Vachereau and the members of the Collective were age 40 or older, were qualified for and performing their jobs satisfactorily, and suffered adverse employment action when TFL selected them for termination.

55. TFL terminated Mr. Vachereau and the Collective members because of their age, while retaining, hiring, or transferring their duties to substantially younger employees.

56. TFL designed and carried out its merger-related RIFs and severance program pursuant to a common plan, applying common decision-makers, a company-wide evaluation of employees, consistent selection criteria, and a single severance plan, that operated to select employees age 40 and older for termination, as reflected by, among other things, the entirely over-60 composition of the February 2025 wave and the selection of Mr. Vachereau for termination over substantially younger comparators. That common, age-based pattern and practice of decision-making is evidence of, and further establishes, TFL's intentional discrimination against Mr. Vachereau and the Collective.

57. TFL's stated reasons for the terminations, including its "position elimination"/merger-consolidation rationale, are pretexts for age discrimination.

58. But for their age, Mr. Vachereau and the members of the Collective would not have been selected for termination.

59. TFL's conduct was willful within the meaning of 29 U.S.C. § 626(b), entitling Plaintiff and the Collective to liquidated (double) damages.

60. As a direct and proximate result of TFL's unlawful conduct, Plaintiff and the Collective have suffered lost wages, lost benefits, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Collective, respectfully requests that the Court enter judgment against Defendant and award the following relief:

a. Conditional certification of the ADEA Collective and court-authorized notice to potential opt-in members under 29 U.S.C. § 216(b);

b. A declaration that TFL's conduct violated the ADEA;

c. Permanent injunctive relief enjoining TFL from further age discrimination and requiring lawful RIF selection criteria, recordkeeping, training, and OWBPA-compliant disclosures for any group termination program;

d. A declaration that any release of ADEA claims obtained from Collective members in connection with the merger-related severance program is invalid and unenforceable under the OWBPA, 29 U.S.C. § 626(f), and that Collective members who accepted severance may participate in this action without tendering back the amounts received;

e. Back pay, lost benefits, and prejudgment interest;

f. Front pay or, where appropriate, reinstatement;

g. Liquidated (double) damages under the ADEA for TFL's willful violations, 29 U.S.C. § 626(b);

h. Reasonable attorneys' fees, expert fees, and costs under 29 U.S.C. § 626(b); and

i. Such other and further relief as the Court deems just and equitable.

## Jury Demand

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: August 26, 2026

TYLER W. BRENNAN LAW, LLC

s/ Tyler W. Brennan
Tyler W. Brennan, MN #0397003
323 N. Washington Ave. #200
Minneapolis, MN 55401
Phone: (612) 351.0084
Fax: (612) 354.4152
tyler@tylerwbrennanlaw.com

BERTELSON LAW OFFICES, P.A.

Beth E. Bertelson, MN #0186806
Andrea R. Ostapowich, MN #0320006
402 Union Plaza
333 Washington Ave. North
Minneapolis, MN 55401
Phone: (612) 238-9832
Facsimile: (612) 340-0190
beth@bertelsonlaw.com
andrea@bertelsonlaw.com

**ATTORNEYS FOR PLAINTIFF & PUTATIVE COLLECTIVE**